**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **WELLS FARGO BANK, N.A., AS TRUSTEE FOR THE REGISTERED HOLDERS OF BANC OF AMERICA COMMERCIAL MORTGAGE INC., COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-5, ACTING BY AND THROUGH ITS SPECIAL SERVICER C-III ASSET MANAGEMENT LLC**, | § § § § § § § § § § | |
| Plaintiff, | § § | |
| v. | § § § | Civil Action No. **3:10-CV-1825-L** |
| **BANK OF AMERICA, N.A.,** | § § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Defendant Bank of America N.A.'s Motion to Transfer This Action to the Southern District of New York, filed October 29, 2010. After carefully considering the motion, response, reply, briefs, appendices, record, and applicable law, the court **grants** Defendant Bank of America N.A.'s Motion to Transfer This Action to the Southern District of New York.

**I.      Background**

Plaintiff Wells Fargo Bank, N.A., as Trustee for the Registered Holders of Banc of America Commercial Mortgage, Inc., Commercial Mortgage Pass-Through Certificates, Series 2007-05, acting by and through its Special Servicer C-III Asset Management LLC ("Plaintiff") filed suit in this court against Defendant Bank of America, N.A. ("Defendant") on September 13, 2010. Defendant now requests that the court transfer this action to the United States District Court for the Southern

District of New York for the convenience of the parties and witnesses and in the interest of justice, pursuant to 28 U.S.C. § 1404(a).

This action arises out of a commercial mortgage-backed securities transaction. Defendant acted as a lender who originated, underwrote, closed, and funded mortgage loans. These loans were transferred to a depositer, Banc of America Commercial Mortgage Inc. ("BACMI"), pursuant to a Mortgage Loan Purchase Agreement (the "MLPA"). BACMI, pursuant to a Pooling and Servicing Agreement, deposited the loans into a trust fund and transferred certain rights and interests in the loans to Plaintiff, who acted as the trustee. C-III Asset Management LLC ("C-III") served as special servicer for the trust.[*] The deposited loans were acquired with the proceeds from the issuance of certain certificates, sold to institutional investors, which represent the interests in the trust.

Defendant allegedly breached certain representations and warranties in the MLPA, resulting in default on a particular loan made by Defendant to Surrey Group, LLC ("Surrey") in the original principal amount of $39,977,571 (the "Loan") to finance the purchase of twenty-three apartment buildings in Hartford, Connecticut (collectively, the "Property"). Surrey's primary owner, Connecticut resident Martin Carlin, allegedly engaged in self-dealing which violated the special purpose entity restrictions in the MLPA. Defendant's closing of the Loan despite such irregularities was allegedly inconsistent with industry underwriting standards. The Loan went into default in January 2009 and was transferred to special servicing. C-III managed the foreclosure of the Property and the related investigation of the Loan's origination, which culminated in this lawsuit. Defendant

---

[*]C-III maintains its principal place of business in Irving, Texas, and is charged with the exclusive responsibility for servicing and recovering all distressed loans held in the trust. Pl.'s App. 153. C-III has authority to enforce representations and warranty through pursuit of breach claims based on misrepresentations of the MLPA. *Id.*

**Memorandum Opinion and Order – Page 2**

contends that this action lacks any connection to the Northern District of Texas and that transfer of venue to the Southern District of New York is proper.

## II.    Legal Standard for Transfer of Venue Under Section 1404(a)

With respect to section 1404(a), "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought."  28 U.S.C. § 1404(a).  In applying section 1404(a), a district court is to first determine "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed."  *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (citing *In re Horseshoe Entm't*, 337 F.3d 429, 432 (5th Cir.), *cert. denied*, 540 U.S. 1049 (2003)). Once this initial determination is made, a district court

> turn[s] to the language of § 1404(a), which speaks to the issue of "the convenience of parties and witnesses" and to the issue of "in the interest of justice."  The determination of "convenience" turns on a number of private and public interest factors, none of which [is] given dispositive weight.  The private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.  The public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law.

*In re Volkswagen AG*, 371 F.3d at 203 (citations omitted).

It is clear from the parties' appendices that the permissive forum selection clause of the MLPA contemplates and allows jurisdiction over claims arising from the MLPA in the federal courts sitting in New York City, which are located in the Southern District of New York.  *See* 28 U.S.C.

§ 112(b).   The court therefore determines that this action could have been originally filed in the Southern District of New York.

Transfer of venue pursuant to 28 U.S.C. § 1404(a) is at the discretion of the court, considering "'[a]ll relevant factors to determine whether or not on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum.'" *Peteet v. Dow Chem. Co*., 868 F.2d 1428, 1436 (5th Cir. 1989) (quoting 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3847 at 370 (1986)).   The moving party bears the burden of demonstrating that a change of venue is warranted.  *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966); *Carlile v. Continental Airlines, Inc.*, 953 F. Supp. 169, 170 (S.D. Tex. 1997).

A plaintiff's choice of forum is entitled to some deference and generally should not be disturbed unless the balance of factors strongly favors the moving party, *see Houston Trial Reports, Inc., v. LRP Publ'ns, Inc.*, 85 F. Supp. 2d 663, 667 (S.D. Tex. 1999); however, a court may not attribute "decisive weight" to a plaintiff's choice of forum.  A "[p]laintiff's choice of forum is clearly a factor to be considered but in and of itself is neither conclusive nor determinative."   *In re Horseshoe Entm't*, 337 F.3d at 434.  Having determined that this action could have originally been filed in the Southern District of New York, the court now considers the eight factors to determine whether this action should be transferred to that district.

**III.   Analysis**

    **A.     Private Interest Factors**

The court considers the private interest factors.  With respect to the first factor, the relative ease of access to sources of proof, the record makes clear that the majority of documentary proof and the persons involved in the structuring of the MLPA and mortgage-backed securities transaction

**Memorandum Opinion and Order – Page 4**

reside in or around New York, Connecticut, and North Carolina.  *See* Def.'s App. 3-4.  These locations are all significantly closer in proximity to New York than to Texas.

Plaintiff argues, however, that this first factor is less important because courts have discounted it in light of the modern ability to share documents electronically.  Further, Plaintiff contends that transferring this case to New York would not make document production any less burdensome on either party, rendering transfer pointless.  While the court is mindful that the modern marvels of technology present substantially less inconvenience for document production over long distances, the Fifth Circuit has stated that such technological development "does not render this factor superfluous [for the purposes of section 1404(a) analysis]."  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 316 (2008) (holding that the district where documents and physical evidence reside weighs in favor of transfer to that district).  Plaintiff has made no indication that any of the documents or physical evidence in this case is located in the Northern District of Texas.  The court accordingly determines that the first private interest factor weighs in favor of transfer.

With respect to the second factor, the availability of compulsory process to secure the attendance of witnesses, the record again makes clear that there are several witnesses potentially necessary for litigation of this claim that reside outside of the subpoena power of this court and who are not under either party's control.  *See* Def.'s App. 3-4.  Transferring to New York would cure many of these concerns.

Plaintiff argues that this second factor is neutral because Defendant has not identified that any of these witnesses would be unwilling to testify in the Northern District of Texas.  Plaintiff further asserts that some of its own potential witnesses (who are also current employees of C-III) reside in this district and suggests that transferring this case to New York would place these

witnesses out of reach of the New York court's subpoena power.  The court is unpersuaded by Plaintiff's contentions.

By Plaintiff's own admission, its potential witnesses are current C-III employees and subject to Plaintiff's control.  If needed, they could appear to testify in court in any venue.  Moreover, that Defendant has not identified any of its nonparty witnesses as unwilling to testify does not factor into the court's analysis because the second factor simply asks the question whether compulsory process to secure the attendance of witnesses is *available*.  The factor draws no limitation on extending availability of compulsory process to only unwilling witnesses.  Currently, there is no compulsory process available to the specific witnesses identified by Defendant.  Such process would be more readily available with a transfer to the Southern District of New York.  Moreover, the court is mindful that video taped depositions are less preferred at trial than live testimony.  The second private interest factor weighs in favor of transfer.

With respect to the third factor, the cost of attendance for willing witnesses, Plaintiff asserts that it has potential witnesses located in or around the Dallas area while Defendant asserts that it has potential witnesses located in or around the New York area.  The court views these contentions as "a wash" because one party's potential willing witnesses will be inconvenienced regardless of the venue chosen.  The court determines that the third private interest factor is neutral.

With respect to the fourth factor, which includes all other practical problems that make trying a case easy, expeditious, or inexpensive, the court sees no practical disadvantage to having the case tried in New York instead of Texas.  The court is unpersuaded by Plaintiff's contention that cases in the Southern District of New York take nearly a year longer to go to trial than in the Northern District of Texas.  Each chambers is different and has a docket schedule dependent upon many

variables.  It is impossible for this court to say with certainty that a chambers in the Southern District of New York is necessarily less efficient than this one.  All federal district courts are subject to the same judicial standards and expectations of expeditious adjudication.  Moreover, as this case has only been pending in this court for just over three months, there is not yet a substantial investment by the parties into this venue.  By the parties' own admission, little or no discovery has yet taken place.  The fourth private interest factor is therefore neutral.

**B.     Public Interest Factors**

The court now considers the public interest factors.  With respect to the first factor, the administrative difficulties flowing from court congestion, the court can identify little if any such administrative difficulties.  As stated, this case has not been pending long in this court, and the parties have yet to invest a significant amount of time, expense, and effort into this venue.  The court has no indication that transferring this case to the Southern District of New York would precipitate an unworkable amount of congestion for the New York court to handle.  The first public interest factor is neutral.

With respect to the second factor, the local interest in having localized interests decided at home, Plaintiff argues that the Northern District of Texas has a strong local interest in this case because C-III's principal place of business is in Irving, Texas, where it employs approximately 204 people.  While the Northern District of Texas may have a public interest when an entity's principal place of business is located within that district, the court agrees with Defendant in that the acts or omissions giving rise to this cause of action did not occur in Texas, but rather occurred in Connecticut, North Carolina, and New York.  C-III's litigious involvement was prompted only afterward.  The court accordingly determines that there is a limited amount of localized interest in

events that occurred primarily in the Northeast, despite a Texas company's subsequent filing of a lawsuit in response to those events. Conversely, the court determines that there is at least a limited amount of localized interest in a New York venue, as at least some of the negotiations giving rise to the MLPA (which Plaintiff claims Defendant breached) occurred in Defendant's New York offices. The court therefore determines that the second public interest factor is either neutral or weighs slightly in favor of transfer.

With respect to the third and fourth factors, the familiarity of the forum with the law that will govern the case and the avoidance of unnecessary problems of conflict of laws of the application of foreign law, both factors weigh in favor of transfer. The permissive forum selection clause identified by the parties makes clear that all "rights, duties, obligations and responsibilities of the parties hereto shall be governed by and construed under the laws of the state of New York without regard to conflict of law principles . . . ." Def.'s App. 19. A federal court sitting in New York certainly has a public interest in ensuring that New York law is properly applied. Moreover, New York law will be applied regardless of venue. It is therefore practical to allow a New York court to apply that law if the option is available for it to do so. The court accordingly determines that both factors weigh in favor of transfer.

### C.    Combined Assessment of the Private and Public Factors

With respect to the private factors, two weigh in favor of transfer, and two are neutral. As to the public factors, two weigh in favor of transfer, one weighs slightly in favor of transfer or is neutral, and one is neutral. In sum, four factors weigh in favor of transfer and, at most, four factors are neutral. On balance, the court concludes that for the convenience of the parties and witnesses

and in the interest of justice, the more convenient forum for this action is the Southern District of New York.

## IV.   <u>Conclusion</u>

For the reasons herein stated, the court **determines** that a majority of the factors and interest of justice clearly warrant a transfer to the Southern District of New York.  Accordingly, the court, pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of the parties and witnesses, in the interest of justice," **transfers** this action to the Southern District of New York.  The clerk of the court shall effect the transfer in accordance with the usual procedure.

**It is so ordered** this 23rd day of December, 2010.


Sam A. Lindsay
United States District Judge