```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                              :
WELLS FARGO BANK, N.A., as Trustee for the                    :
Registered Holders of Banc of America                         :
Commercial Mortgage Pass-Through Certificates,                :
Series 2007-5, acting by and through its Special              :
Servicer C-III ASSET MANAGEMENT, INC.,                        :         10 Civ. 9584 (JPO)
                                        Plaintiff,            :
                                                              :         OPINION AND ORDER
                       -v-                                    :
                                                              :
BANK OF AMERICA, N.A.,                                        :
                                        Defendant.            :
                                                              :
-------------------------------------------------------------X
```

J. PAUL OETKEN, District Judge:

      This case involves violation of certain representations in a mortgage loan sale agreement. The Court has previously granted summary judgment for Wells Fargo Bank on liability. The Court has yet to rule on three disputes between the parties with respect to the calculation of damages. The Court holds that Wells Fargo has not waived its right to statutory prejudgment interest under N.Y. C.P.L.R. § 5001(a). The Court reserves judgment on two further issues until Bank of America has had the opportunity for additional discovery.

**I.      Background**

      On March 28, 2013, the Court granted the Wells Fargo's motion for summary judgment as to Defendant Bank of America's liability. (Dkt. No. 98.) Familiarity with that decision is assumed here. The Court held that Wells Fargo is entitled to the purchase price, as defined in the Pooling Services Agreement, offset by any proceeds from the liquidation of the properties that were not applied to reimburse the Trust for reasonable servicing advances. (*Id.* at 23.) Wells

Fargo moved for a money judgment for the amount of the purchase price offset by $1,883,872.45 in unapplied proceeds from liquidation of the properties.  (Dkt. No. 104, Ex. A at 2, 3.)

Bank of America sought discovery on three points: first, the calculation of net cash flow from the properties; second, the results of Wells Fargo's audit of the accounting records for net cash flow from properties; and third, the reasons why Wells Fargo granted $2.2 million in tax and due diligence waiver credits toward the sale price of the properties.  (Dkt. Nos. 107, 112.) The Court heard the parties on these issues at a telephone conference and ruled that Bank of America would not be entitled to reopen discovery in general; however, the Court reserved judgment as to reopening discovery regarding the $2.2 million in sale price credits and requested further documentation on that point from Wells Fargo.  (Dkt. No. 116 at 21:11–21.)

At the close of the conference, Wells Fargo's counsel asked the Court: "Do you do the prejudgment interest calculation or do you need us to do that as well?" (*Id.* at 25:03–04.)  The letter briefs the parties exchanged before the conference had not discussed prejudgment interest. (Dkt. Nos. 104–05, 107–110, 112.)

The parties exchanged letter briefs regarding the $2.2 million in sale price credits, and a dispute developed as to whether Wells Fargo is entitled to statutory prejudgment interest.  (Dkt. Nos. 118– 121.)  The Court held a telephone conference to discuss the prejudgment interest issue and reserved judgment. (Dkt. No. 126.)  The parties then exchanged three further letters regarding the balance of the loan as of August 2009.  (Dkt. Nos. 123–25.)

The facts relevant to the prejudgment interest issue are as follows.  The Mortgage Loan Purchase and Sale Agreement (MLPSA), which conveyed mortgage loans to Wells Fargo, and the Pooling Services Agreement (PSA), which governs the servicing of those loans, both provide for specific remedies for breach of the MLPSA.  First, if Bank of America breaches a warranty

representation about a mortgage loan it conveyed to Wells Fargo, Bank of America must repurchase or cure the defective mortgage loan upon notice of the breach. MLPSA § 4(c) (Dkt. No. 124-3). If Bank of America cures or repurchases a defective mortgage loan, the cure or repurchase is Wells Fargo's sole remedy for breach of a warranty representation. PSA § 2.03(h) (Dkt. No. 124-1).

Second, if a court orders Bank of America to make a cash payment in lieu of repurchasing a defective mortgage loan, the amount of that payment may be determined by "mutual agreement . . . or . . . judicial decision." PSA § 2.03(i). Such a payment is defined as a "loss of value payment." *Id.* If Bank of America makes a loss of value payment, the payment is Wells Fargo's sole remedy for Bank of America's breach. *Id.*

New York law governs interpretation of these agreements. MLPSA § 14; PSA § 12.04.

## II. Discussion

### A. Prejudgment Interest

New York law requires courts to award prejudgment interest on damages resulting from a breach of contract. N.Y. C.P.L.R. § 5001(a); *U.S. Naval. Inst. v. Charter Commc'ns, Inc.*, 936 F.2d 692, 698 (2d Cir. 1991) ("[A] plaintiff who prevails on a claim for breach of contract is entitled to prejudgment interest as a matter of right."). Prejudgment interest is intended to compensate the nonbreaching party for lost use of money owed by the breacher. *J. D'Addario & Co., Inc. v. Embassy Inds., Inc.*, 20 N.Y.3d 113, 117 (2012). For this reason, a plaintiff is entitled to prejudgment interest even if the underlying contract itself provides for interest on overdue payments—in other words, a plaintiff can recover prejudgment interest on unpaid principal *and* unpaid interest. *Spodek v. Park Prop. Dev. Assocs.*, 96 N.Y. 2d 577, 581 (2001). Whether the amount owed represents principal or accrued interest, the plaintiff was entitled to

the money just the same, and prejudgment interest compensates the plaintiff for lost use of her money. *Id.* at 581–82; *see also NML Capital v. Republic of Argentina*, 17 N.Y.3d 250, 266–67 (2011) ("The application of statutory interest on unpaid interest payments compensates [the plaintiff] for a distinct injury—[] failure to timely make interest payments.").

But parties can waive the right to statutory prejudgment interest. *J. D'Addario*, 20 N.Y.3d 113. In *J. D'Addario*, parties to a commercial real estate transaction agreed on a specific remedy for any potential default by the buyer. 20 N.Y.3d at 121 n.*. The parties designated funds in escrow as liquidated damages, provided for interest on the escrowed funds, and referred to the funds as the "sole remedy" for default. 20 N.Y. 3d at 118. The buyer ultimately breached the contract. *Id.* at 117. The New York Court of Appeals held that the seller was not entitled to prejudgment interest because, as "establish[ed]" by the foregoing contract terms, the seller waived its right to prejudgment interest. *Id.* at 118 ("The use of the terms 'sole remedy,' 'sole obligation,' and 'no further rights' by the parties, together with the provision for interest on the escrowed sum, was sufficiently clear to establish for purposes of this transaction that interest paid at the statutory rate was not contemplated by the parties at the time the contract was formed."). This holding was based on longstanding New York precedent that parties to a civil contract may waive statutory or constitutional rights in a contract, so long as the waiver does not violate public policy. *Id.* at 119 (quoting *Town of Orangetown v. Magee*, 88 N.Y.2d 41, 54 (1996)).

A recent federal district court opinion, *Katzman v. Helen of Troy Texas Corporation*, No. 12 Civ. 4220 (PAE), 2013 WL 1496952 (S.D.N.Y. Apr. 11, 2013), discussed *J. D'Addario* at length. The court looked to New York Court of Appeals decisions governing waiver of other rights and, consistent with those decisions, read *J. D'Addario* to establish a "clear-statement

rule" governing waivers of the right to statutory prejudgment interest. *Id.* at \*6 (citing *Fundamental Portfolio Advisors, Inc. v. Toqueville Asset Mgmt., L.P.*, 7 N.Y.3d 96, 104 (2006); *Gilbert Frank Corp. v. Fed. Ins. Co.*, 70 N.Y.2d 966, 968 (1988)). This Court agrees with the analysis in *Katzman*; a waiver of the right to statutory prejudgment interest must be clear.[1]

In this case, Wells Fargo agreed that it would accept any of three alternative remedies as its "sole remedy" for Bank of America's breach of a warranty representation. Two of those remedies―cure on demand and repurchase on demand―are discussed in § 2.04(h) of the PSA. The third remedy—the remedy at issue here—is a cash payment. PSA § 2.04(i). This payment is termed a "loss of value payment," defined in relevant part as "a cash payment . . . in lieu of [] repurchase," "pursuant to . . . judicial order," the amount of which "shall be determined . . . by judicial decision."[2]  *Id.*  In short, Wells Fargo agreed to accept a court-ordered cash payment from Bank of America, in an amount determined by the Court, as its sole remedy. Wells Fargo did not agree to any limits on *how* the Court is to calculate the amount of the payment. Wells Fargo's agreement to accept a court-ordered cash payment as its sole remedy is not a clear waiver of its right to prejudgment interest.[3]

---

[1] The Court does not agree, however, that a waiver of prejudgment interest must be express. *See id.* at \*6. The waiver in *J. D'Addario* was not express, but the New York Court of Appeals held that the waiver was valid.

[2] The PSA's provision allowing a loss of value payment as an alternative sole remedy distinguishes this case from other cases where cure and repurchase are the sole remedies contemplated by the PSA. Courts have divided over whether money damages are appropriate in such cases. *Compare MASTR Adjustable Rate Mortgs. Trust 2006-OA2 v. UBS Real Estate Secs., Inc.*, No. 12 Civ. 7322 (HB), 2013 WL 4399210, \*2–\*4 (S.D.N.Y. Aug. 15, 2013) (declining to foreclose possibility of money damages in lieu of specific performance and citing two cases allowing the same), *with MASTR Assed Backed Secs. Trust 2006-HE3 ex rel. U.S. Bank Nat'l Assoc. v. WMC Mortg. Corp.*, 843 F. Supp. 2d 996, 1001 (D. Minn. 2012) (holding money damages unavailable).

[3] The Court also notes that because of the impenetrable construction of § 2.03(i)—and of the PSA and MPLSA in their entirety—it would be disingenuous to hold that Wells Fargo clearly

Bank of America argues that use of the words "sole remedy" in § 2.03(i) waived Wells Fargo's right to prejudgment interest. (Dkt. No. 124 at 1–2.) This is a misreading of *J. D'Addario*. Use of the words "sole remedy" is not code for "I waive prejudgment interest." Rather, use of the words "sole remedy" means that the parties agree on one remedy for a breach of contract. This *may* operate to waive prejudgment interest, where the parties "chart their own course" by designing a remedy that otherwise compensates the nonbreaching party for lost use of the money she is owed (*e.g.*, interest on an escrowed sum). *J. D'Addario*, 20 N.Y.3d at 118–19

---

waived its right to prejudgment interest. There is very little about these agreements that the Court would describe as "clear." The text of § 2.03(i) is reproduced below for the reader's reference and amusement:

> In the event that either pursuant to a settlement agreed to by the Mortgage Loan Seller and the Special Servicer on behalf of the Trust (it being understood that the provisions of this Section 2.03(i) shall not constitute a waiver of the Trust's rights under Section 2.03(h) unless the Special Servicer, on behalf of the Trust, has agreed to accept a loss of value payment in lieu of the Trust's rights under Section 2.03(h)) or a judicial order, the Mortgage Loan Seller makes a cash payment, either as a cure of a Material Breach or a Material Defect, or in lieu of a repurchase of a Mortgage Loan on which a Material Breach or a Material Defect exists or is alleged to exist (each such payment, a "Loss of Value Payment") with respect to such Mortgage Loan, the amount of each such Loss of Value Payment shall be determined either (i) by mutual agreement of the Special Servicer on behalf of the Trust with respect to such Material Breach or Material Defect, as the case may be, and the Mortgage Loan Seller or (ii) by judicial decision. Provided that such Loss of Value Payment is made, the Loss of Value Payment shall serve as the sole remedy available to the Certificateholders and the Trustee on their behalf regarding any such Material Breach or Material Defect in lieu of any obligation of the Mortgage Loan Seller to otherwise cure such Material Breach or Material Defect or repurchase the Defective Mortgage Loan based on such Material Breach or Material Defect under any circumstances. In the event there is a Loss of Value Payment made by the Mortgage Loan Seller in accordance with this Section 2.03(i), the amount of such Loss of Value Payment shall be deposited into the Loss of Value Reserve Fund to be applied in accordance with Section 3.05(g).

(holding waiver was clear because designation of the sole remedy as a specific sum of money, *together with* a provision for the time value of the money, demonstrated a clear intent to waive prejudgment interest).

Here, the parties did not "chart their own course." The parties agreed that, in the event that Bank of America made a court-ordered cash payment in lieu of repurchase, such payment would be Wells Fargo's sole remedy. The value of such payment is to be determined "by judicial decision." The parties did not supplant the statutory scheme by creating their own plan to compensate Wells Fargo for the time value of the purchase price if Bank of America wrongfully refused to repurchase. Instead, the parties delegated calculation of those damages to the Court, which is bound by statute. The parties' chosen remedy does not entail waiver of Wells Fargo's right to statutory prejudgment interest.

Other courts agree with this analysis. Consider the purpose of the repurchase provision. Interpreting a similar set of agreements under New York law, the First Circuit held that a repurchase provision is intended to shift risk to the seller, such that "from the moment a proper repurchase demand was made, [the seller]—not [the buyer]—should have borne the risk of any market fluctuations." *Resolution Trust Corp. v. Key Fin. Svcs., Inc.*, 280 F.3d 12, 18 & n.14 (1st Cir. 2002). To give effect to the intended allocation of risk between the parties, the Court must shift the risk of market fluctuations back to Bank of America as of the date that Wells Fargo made its repurchase demand. Wells Fargo is therefore entitled to the purchase price as of the date it demanded repurchase. If Wells Fargo had bargained away its right to prejudgment interest, there would be little incentive for Bank of America to cure or repurchase under any circumstances. Bank of America could roll the dice at minimal cost by forcing Wells Fargo to file suit—if Bank of America "lost," it would still pay the same amount in damages. It is

doubtful that the parties intended such an arrangement.  *Cf. Katzman*, 2013 WL 1496952, at *6 ("[S]uch an agreement would give [defendants] impunity . . . . [T]he money would stay in the escrow account until it was ordered to be paid . . . , but under no circumstances would [defendants] face financial consequences (e.g., prejudgment interest) for having invented bogus claims to keep it there.").

Wells Fargo is entitled to the deal it bargained for: the purchase price as a remedy for Bank of America's breach.  To make Wells Fargo whole, the Court must restore Wells Fargo to the position it would have been in if Bank of America had actually repurchased the loans.  The correct calculation of damages is therefore the amount that Bank of America would have paid if it had repurchased the loans when it was supposed to have done so, plus statutory prejudgment interest from that date, plus costs of mitigation and servicing, less unapplied income from the loans and the properties between the date of the repurchase demand and the date of judgment.  *See Resolution Trust Corp.*, 280 F.3d at 18 n.15, *aff'g F.D.I.C. v. Key Fin. Servs., Inc.*, No. 89 Civ. 2366, 1999 WL 34866812 (D. Mass. Dec. 23, 1999).

### B.     Sale Price Credits

A party moving for summary judgment must demonstrate each element that she would need to prove at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986).  If the moving party makes this showing, the burden shifts to the nonmoving party to identify specific facts showing that there is a genuine issue for trial; in other words, specific facts showing that reasonable jurors could differ about the evidence.  Fed. R. Civ. P. 56; *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)) (defining "genuine issue"); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986) (discussing burden on nonmoving party).  The Court may not grant summary judgment

unless the nonmoving party has had an opportunity to discover information essential to its opposition. *Anderson*, 477 U.S. at 250 n.5.

Wells Fargo has produced evidence in support of its calculation of damages. Bank of America disputes $2.2 million in credits that Wells Fargo granted toward the sale price of the properties. It is Bank of America's burden to set forth specific facts showing a genuine issue about the propriety of these credits. But before the Court can impose that burden, Bank of America must be permitted to investigate the sale of the properties through discovery. Discovery in this case closed in May 2012, which was before Wells Fargo granted the sale credits. The Court is prepared to allow Bank of America 45 days of discovery on this issue.

The Court observes that, over a 45-day period of discovery, prejudgment interest will continue to accrue against Bank of America. Bank of America may therefore wish to concede these credits and proceed to judgment.

### III. Conclusion

Wells Fargo is entitled to the purchase price as of August 24, 2009, plus statutory prejudgment interest from that date, plus costs of mitigation and servicing between the date of the repurchase demand and the date of judgment, less unapplied income from the loans and the properties between the date of the repurchase demand and the date of judgment.

Within one week, Bank of America shall inform the Court whether it prefers to conduct discovery on the $2.2 million in sale price credits or waives the issue.

SO ORDERED.

Dated: New York, New York
February 6, 2014

_____
J. PAUL OETKEN
United States District Judge